```
 1                  UNITED STATES DISTRICT COURT
                     DISTRICT OF SOUTH DAKOTA
 2                       WESTERN DIVISION

 3   * * * * * * * * * * * * * * * * * * * * * * * * * * * *
                                    )
 4   UNITED STATES OF AMERICA,      )   5:20-cr-50122
                                    )
 5              Plaintiff,          )   Rapid City, South Dakota
                                    )   Courtroom 2
 6      -vs-                        )
                                    )   March 22, 2021
 7   GEORGE DULL KNIFE,             )   12:19 p.m.
                                    )
 8              Defendant.          )
                                    )
 9   * * * * * * * * * * * * * * * * * * * * * * * * * * * *

10                        TRANSCRIPT OF
                        DETENTION HEARING
11
                       BEFORE THE HONORABLE
12                       DANETA WOLLMANN
                   UNITED STATES MAGISTRATE JUDGE
13
     * * * * * * * * * * * * * * * * * * * * * * * * * * * *
14
     APPEARANCES:
15
     Counsel for Plaintiff:   Kathryn Rich
16                            U.S. Attorney's Office
                              515 Ninth Street, Suite 201
17                            Rapid City, SD 57701

18   Counsel for Defendant:   Stephen D. Demik
                              Law Office of Stephen D. Demik
19                            1617 Sheridan Lake Road
                              Rapid City, SD 57702
20
     Also Present:  George Dull Knife - Defendant
21
     Transcriber:  Carla Dedula, RPR, CRR, CRC
22

23

24

25
```

1                  (Proceedings in open court at 12:19 p.m.)
2            THE COURT:  This is in the matter of the United
3    States of America v. George Dull Knife.  It's criminal file
4    number 20-50122.
5            Counsel, would you note your appearances for the
6    record.
7            MS. RICH:  Kathryn Rich for the United States.
8            MR. DEMIK:  Good afternoon, Your Honor.  Stephen
9    Demik on behalf of George Dull Knife present before the
10   court.
11           THE COURT:  The report should reflect that all
12   parties are present here in the courtroom.
13           Good afternoon, Mr. Dull Knife.
14           THE DEFENDANT:  Good afternoon, Your Honor.
15           THE COURT:  We are here before the court on the
16   defendant's motion for release.  I did review that as well
17   as the attachment which had the transcript from the initial
18   appearance in Oregon.  And then I have also gone back and
19   reviewed Document 1, the Indictment; as well as Document 26,
20   the addendum to the Pretrial Services Report; as well as the
21   original Pretrial Services Report at Document 25.
22           So with that, Mr. Demik, this is your motion so
23   I'll have you proceed first.
24           MR. DEMIK:  Yes, Your Honor.  I agree with pretrial
25   services that Mr. Dull Knife presents a low risk of

1  nonappearance according to Docket 26 and low risk of danger
2  to the community. He has very little criminal history at
3  all, and so we would ask that he be released. I can
4  represent to the Court that I spoke to his sister, Cora, who
5  is the intended release plan. She's in Rapid City. She's
6  fully aware of court today. She just couldn't get off of
7  work.
8         THE COURT: Sure.
9         MR. DEMIK: But she did want me to represent to the
10 Court that she's perfectly willing and able to accept
11 Mr. Dull Knife and make sure that he appears at all court
12 appearances.
13        THE COURT: Ms. Rich.
14        MS. RICH: Thank you, Your Honor. I'm appearing
15 here today on behalf of Ms. Sazama, who is in Pine Ridge
16 doing trial preparations on a different case. But I have
17 been briefed on this.
18        The United States is seeking detention of Mr. Dull
19 Knife pending trial in this matter. The factors for the
20 Court to consider under the release statutes notes under
21 3142(e)(3)(B) there is a presumption of detention in this
22 case because the defendant is charged with a
23 924(c)(1)(A)(iii) discharge of a firearm during the
24 commission of a violent crime. That's a 10-year mandatory
25 minimum charge. So based on that charge there is a

1 presumption that he be detained unless he can properly rebut
2 that.
3 　　　　　The nature of the charges are all crimes of
4 violence, the 924(c), in addition, the other remaining
5 charges that are listed in the Indictment, which the Court
6 indicated it reviewed:  Assault with intent to commit
7 murder, assault with a dangerous weapon.  The remaining
8 charges are against the co-defendant.  The nature of these
9 charges reflect an assault against Carmen Burgee, who was
10 shot in her hand.  She has been in communication with our
11 office.  And under her rights under the Crime Victims'
12 Rights Act -- she is living in the Fort Pierre area, and so
13 she could not be personally present for the hearing today,
14 but she did indicate that she wanted us to convey that she
15 is suffering from severe PTSD symptoms as a result of her
16 injuries and is fearful of the defendant being released.
17 She required surgery on her hand and lost her job as a nurse
18 due to the injuries.
19 　　　　　The incident occurred as she and another individual
20 were leaving the Dull Knife property.  They were attempting
21 to leave when they were shot at by the defendant.  Multiple
22 shots hit the vehicle various places on the vehicle as it
23 was leaving and hit the side, the back seat, blew out the
24 back window, the side pillar between the front and back seat
25 of the cars.  The rear windshield was gone.  So it was not

just a single shot. This was a multiple shot barrage. Multiple witnesses identified the defendant there as the shooter. Multiple firearms were found at the scene when the search warrant was conducted in this case. Live ammunition and spent casings were all located in various -- around the residence and in various vehicles on the property.

I know the defendant doesn't have a significant criminal history. However, he does have a tribal arrest history, the Oglala Sioux Tribe, significant for assault and intoxication. I do have a copy of his tribal criminal history, which indicates that on July 7th, 2017, he was arrested for child endangerment, disorderly conduct, elder abuse, breaking and entering. On December 18, 2017, he was arrested for a tribal weapons offense. On April 19, 2020, he was arrested for second degree assault and disorderly conduct. On May 5 of 2020 he had protective -- taken into protective custody due to intoxication and drunk driving. And then that was all leading up to this arrest, which occurred on -- or excuse me, this offense, which is alleged to have occurred on August 5 of 2020. In addition, there's multiple reports of domestic violence between him and his co-defendant leading up to this shooting.

As to the risk of nonappearance, the defendant has demonstrated that he has connections outside of South Dakota and left immediately following this incident and went to

1    Oregon.  I understand he's contesting that it was a flight.
2    However, he did leave immediately following.
3              THE COURT:  Do you have a timeline for that?
4              MS. RICH:  It was within several days, Your Honor.
5              THE COURT:  Thank you.
6              MS. RICH:  I don't know the exact time frame but
7    within a week.
8              Furthermore, his co-defendant is a significant
9    other.  She is out on release and, my understanding, is back
10   in the area.  And she's alleged to have lied to law
11   enforcement as part of covering up for the defendant in
12   this.
13             Further, Your Honor, our concerns are that even if
14   he were to agree to conditions and to reside with his sister
15   here in Rapid City, that there really are no meaningful
16   conditions that the Court could place that would ensure the
17   safety of victims and potential witnesses, which include
18   family members, and that would keep him separate from his
19   co-defendant in this case in a way that is -- for example,
20   if they have communications now, they're all either recorded
21   through the jail system or something to that nature; but
22   outside, with just conditions, that's not going to be
23   sufficient to curtail any conversations that they might
24   have.  And there -- you know, even house arrest or ankle
25   monitoring, it doesn't stop a person from going other

1    places.  We would know if they left under ankle monitoring,
2    but it wouldn't stop anything from actually happening after
3    he were to leave that location.  And so I don't have -- I
4    don't know anything else about the defendant's proposed
5    release plan as far as whether or not his sister is
6    suitable.  It sounds like she's gainfully employed, but it
7    doesn't sound as if probation has had the opportunity to
8    visit with her or to verify any of the suitability of the
9    home and what he would be doing there in a way that would
10   keep everyone safe and keep him from leaving.  So we would
11   ask that he be detained.
12             THE COURT:  Mr. -- I tell you I reviewed the
13   transcript.  And I realize the information that was relayed
14   to the judge in Oregon was secondhand through an AUSA.  Have
15   you reviewed that transcript?
16             MS. RICH:  I did prior to court, Your Honor.
17             THE COURT:  Is it accurate what was presented to
18   the judge as far as the nature of the charges -- that there
19   was a minor in the car?  It was sort of implied that there
20   was somewhat of a pursuit.  Is that accurate?
21             MS. RICH:  There was somewhat of a pursuit, but
22   it's not my understanding that that person was a minor, Your
23   Honor.  There was another person driving.  The victim was
24   not the driver.  It was a younger person but not a -- but
25   not like a minor child.

1    THE COURT: Okay. And then what was this -- if you
2    could elaborate on the nature of the pursuit.
3    MS. RICH: So there was -- the defendant -- so the
4    person -- Carmen, the victim, and then the other person in
5    the vehicle was the child of Carmen, an adult child, but a
6    child of her. And they were there to pick someone up at the
7    residence. And that person was not ready to leave yet, and
8    so they had -- were going to come back. And so there's kind
9    of all matter of family connections. I had specifically
10   inquired of the agent the connection between the victim and
11   the defendant, and it's my understanding is that the driver,
12   who is Carmen's son, is -- so Carmen is the mother to K.T.
13   Burgee is the person in the vehicle who is the defendant's
14   stepdaughter's -- the father of that child. So it's kind of
15   a convoluted connection, but there is like a familial
16   connection there through various relationships. And so they
17   were there to pick up someone. And then as they were
18   leaving, they drove -- there's like a little approach to the
19   house, and they drove towards the highway. And then that's
20   when, as they were leaving, that the defendant began
21   shooting at the vehicle. And they called for law
22   enforcement and kept leaving, but not before, like, multiple
23   rounds were fired at the vehicle.
24   THE COURT: Thank you, Ms. Rich.
25   And then lastly, do you have a copy of the

```
 1   defendant's tribal history?
 2            MS. RICH:  I do, Your Honor.  And I would note for
 3   the record that this has been provided to the defense in the
 4   course of discovery.
 5            THE COURT:  All right.
 6                 (Pause)
 7            THE COURT:  All right.  Mr. Demik, any response?
 8            MR. DEMIK:  Yes, Your Honor.  I'll just take the
 9   points in order as provided by the prosecutor.
10            First of all, with regards to the argument that
11   it's a crime of violence in relation to a felony, I think
12   that's sort of legal Jiu-Jitsu.  Because the felony offense,
13   of course, is assault with a dangerous weapon.  And so that,
14   of course, is alleged to have happened with a firearm.  So
15   it's not a separate felony offense.  It's an assault with a
16   firearm.
17            That said, Your Honor, I don't deny that there's a
18   rebuttable presumption.  I think that's what the law states
19   clearly.  I do think the presumption can and is rebutted
20   here.
21            With regards to the offense conduct, which is the
22   majority of the government's presentation, my client is
23   presumed innocent until he's proven guilty.  Now I am at
24   somewhat of a disadvantage because I just received discovery
25   this morning.  It's rather voluminous, so I just started
```

1  going through it before court this morning. I haven't had a
2  chance to go through all of it. So I'm ill-prepared to
3  specifically rebut every point made by the prosecutor. But
4  I think it's enough to say that my client is presumed
5  innocent, and the law is very clear on that.
6      With regards the firearms that were found at his
7  residence, Your Honor, that isn't a crime. If you look at
8  his criminal history, there's no felony convictions. He's
9  not a prohibited person. I dare to say if you searched most
10 houses in South Dakota you would probably find firearms.
11 That doesn't mean he's a danger to the community.
12      There's no record of any violence. I have not had
13 a chance to review the tribal records, Your Honor. I don't
14 dispute that those were probably in discovery, but I haven't
15 had a chance to go through those. But if we look at his
16 criminal history, as stated in Document 25, which is the
17 Pretrial Services Report, there's one disorderly conduct
18 from 2016, which I believe is related to a protest. Again,
19 no violence associated with that, Your Honor. So I don't
20 think that that shows in any way, much less by
21 clear-and-convincing evidence, that my client presents a
22 danger to the community. In fact, I would say his lack of
23 criminal history proves the opposite.
24      With regards the tribal history, I already stated,
25 Your Honor, I haven't received those records. If the Court


1  does rely on that tribal history, Your Honor, I would like
2  an opportunity to come back before the Court, perhaps
3  investigate those.  In my experience, anecdotally, tribal
4  history records don't always reflect the actual facts as
5  they transpired.
6              Lastly, Your Honor, with regards to the
7  co-defendant, the release plan that I'm proposing releases
8  my client to Rapid City.  My understanding by the
9  prosecutor's presentation is that the co-defendant would be
10 on the reservation.  So that's one point.
11             The second point is that, with regards to
12 recordings of phone calls, well, that may be true, Your
13 Honor, but nowhere in 3142 do we consider the government's
14 ability to record somebody's phone calls to keep somebody in
15 detention.  I don't agree with that argument.  I think that
16 conditions can be set.  And in Document 26 on the second
17 page the pretrial services recommends that my client not
18 have any contact with any alleged victims, witnesses, or
19 codefendants.  That's a standard condition in many cases in
20 this district, and there's a multitude of ways that pretrial
21 services can enforce that, Your Honor.
22             I don't think that my client presents -- I agree
23 with pretrial services that he doesn't present a risk of
24 nonappearance and a very low risk of danger to the
25 community.  So I'm joining pretrial services in recommending

1  and requesting that he be released on bond.  If there are
2  any other conditions that the Court would like to impose, I
3  can discuss them with my client.  I don't foresee any
4  objection to those whatsoever.
5         It is a serious case, Your Honor, but my client is
6  presumed innocent, and we haven't had a trial on this
7  matter.  Now is, obviously, not the time for that trial.
8  Now what 3142 tells us is nothing in this section shall be
9  construed to go against the presumption of innocence which
10 rules here.
11        So I am asking for release, Your Honor.  I think
12 it's an appropriate case for release.  Thank you.
13        THE COURT:  Thank you, Mr. Demik.
14        Well, Mr. Dull Knife, I have reopened the detention
15 hearing at your attorney's motion.  It is a bit curious that
16 the judge in Oregon said that he held a detention hearing
17 and then deferred to this court to rehold one.  That's a bit
18 unusual, but that's fine.  We'll reopen the detention
19 hearing so I have an opportunity, like we've done here
20 today, for me to take a fresh -- what's called a de novo
21 look at it.
22        In deciding whether to release or detain you, I'm
23 to apply a statute that's known as the Bail Reform Act.
24 That's at 18 U.S.C. §3142.  And I'm to consider, first of
25 all, the nature and circumstances of the offense charged,

1    whether or not it involves a crime of violence, or if it
2    involves a firearm.  There's other ones that fall in that:
3    Minor victims, controlled substances.  But so the analysis
4    starts with the nature.  There are some crimes when people
5    are charged with them Congress has said people who are
6    charged with this should be detained, because it's such a
7    serious crime, unless there is evidence that rebuts that
8    demonstrating that you're not a flight risk or not a danger
9    to the community.
10            And for risk of flight, the government would need
11   to show that by a preponderance of the evidence that you're
12   a risk of flight; or if you're a danger, they'd have to show
13   that by clear and convincing evidence.  So that's the burden
14   of proof.
15            And I'm to weigh a number of factors in answering
16   those questions.  I'm to consider the weight of the evidence
17   against the person.  I'm to consider the history and
18   characteristics of the person, including your character;
19   your physical and mental condition; your family ties; your
20   history of employment; your financial resources; your length
21   of residence in the community; your community ties; your
22   past conduct; your history relating to drug or alcohol
23   abuse; your criminal history; your record concerning
24   appearances in court at court proceedings; and whether at
25   the time of the alleged offense if you were on some form of

1  supervision -- which you weren't here, so that factor does
2  not apply -- and then finally, the nature and seriousness of
3  the danger to any person or the community that would be
4  posed by your release.
5        Nothing about the court's analysis removes the
6  presumption of innocence.  Regardless of any decision by the
7  court whether to release or detain you, you are presumed to
8  be innocent of the charges.
9        A number of these factors weigh in your favor.  You
10 have been a lifelong resident of the community, other than
11 this period of time where you were absent.  I'll talk about
12 that in just a moment.  You have strong community ties.  You
13 have a history of employment in the past.  Excluding your
14 criminal tribal history, there's at least no state
15 indication that you have a history of substance abuse.  Now
16 your tribal history indicates otherwise:  That there are
17 some substance abuse issues.  And then finally, there's
18 nothing to indicate that you have any mental health
19 conditions or problems.  So those are all things that weigh
20 in your favor.
21       I was going to indicate that you have little to no
22 criminal history.  That analysis has since been -- I
23 revisited that, given the fact that -- and I'm going to mark
24 this and put it into evidence -- that you do have a tribal
25 history that does involve some alleged assaults, a weapons

1  offense.  There's at least two assaults.  And so there is
2  some indication that you do have a criminal history that's
3  troubling to the court.
4          The other thing that is apparently in dispute is
5  the timing of you leaving the jurisdiction.  It is troubling
6  to me.  I know there's some representation that you left to
7  take care of a family member of your co-defendant.  However,
8  it is extremely concerning that that would happen,
9  coincidentally, immediately after this very serious offense.
10         Finally, that brings us to analyze the other
11 factor:  One, again, this presumption; but I'm to consider
12 the nature of the charges here.  It involves a firearm.  The
13 allegation is that there were multiple shots fired, striking
14 a victim.  Fortunately, nobody was killed or you'd be
15 looking at potentially much different, more serious charges.
16 But the government's proffered evidence that multiple
17 witnesses have identified you as the shooter.  And while I
18 agree with Mr. Demik that in and of itself possessing a
19 firearm, if that was found on the property, isn't a crime,
20 it would be evidence to support allegations that a firearm
21 was used to shoot at a vehicle shortly before.  So that goes
22 to the weight of the evidence which weighs in favor of
23 detention.
24         The victim still does live in the area and has
25 expressed that she is fearful of you.  I don't know anything

1  about the motivation involved, but certainly the multiple
2  shots as a vehicle was fleeing gives the court pause.
3        And I've thought back on cases where I have
4  released defendants and where I've detained defendants
5  involving shooting at vehicles.  The ones -- and on two
6  occasions was -- I've released somebody who shot at a
7  vehicle where there was one single shot.  Fortunately,
8  nobody, I don't believe, in any of those instances was
9  struck or injured; or if so, it was shrapnel or glass that
10 caused an injury.  And then I have one case where somebody
11 else had multiple shots, or they used a gun that was likely
12 to cause injury.  And in that case when there was an injury
13 that occurred, I detained that person.
14       And this case presents a very close call for me,
15 but I'm going to decide to detain you based on the fact that
16 multiple shots were fired, along with the fact that there is
17 some indication that you've had prior instances of weapons
18 and assault charges, along with the presumption.
19       So I do find that the decision to detain you still
20 remains the correct one.  I will enter an oral order denying
21 your motion for release.
22       And if you think I've made a mistake or the wrong
23 decision, you certainly have the right to appeal that to the
24 district court judge, Judge Viken.  And he would give it a
25 de novo review and review the evidence and facts

1  independently and decide if you should be released or
2  detained.  But I find, given the nature of the circumstances
3  here, the multiple shots, the victim is fearful of you, your
4  prior weapons offense and assault charges in tribal court,
5  that it is appropriate to detain you.  So that will be my
6  decision.  And again, you're free to appeal that if you wish
7  to do so.
8            Anything further?
9            MS. RICH:  No, Your Honor.
10           MR. DEMIK:  No, Your Honor.  Thank you.
11           THE COURT:  All right.  We'll be adjourned.
12               (Proceedings concluded at 12:42)

```
 1  UNITED STATES DISTRICT COURT)
    DISTRICT OF SOUTH DAKOTA    : SS   CERTIFICATE OF TRANSCRIBER
 2  SOUTHERN DIVISION           )

 3      I, Carla Dedula, Official United States District Court

 4  Reporter, Registered Professional Reporter, Certified

 5  Realtime Reporter, and Notary Public, hereby certify that

 6  the above and foregoing transcript has been transcribed to

 7  the best of my ability from the District Court's FTR

 8  recording system consisting of pages 1 - 17.

 9      I further certify that I am not a relative or employee

10  or attorney or counsel of any of the parties hereto, nor a

11  relative or employee of such attorney or counsel, nor do I

12  have any interest in the outcome or events of the action.

13      IN TESTIMONY WHEREOF, I have hereto set my hand this

14  9th day of April, 2021.

15

16
    _____
17  CARLA DEDULA RPR, CRR, CRC
    400 S. Phillips Avenue
18  Sioux Falls, SD 57104
    Phone: (605) 330-6669
19  Email:  carla_dedula@sdd.uscourts.gov
    My Commission Expires:  May 24, 2026
20

21

22

23

24

25
```