UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>GEORGE DULL KNIFE,<br><br>                Defendant. | CR. 20-50122-01-JLV<br><br>ORDER |

      Defendant George Dull Knife is charged with the discharge of a firearm during and in relation to a crime of violence, assault with intent to commit murder and assault with a dangerous weapon. See Docket 1. He was arrested on the pending charges in Oregon and appeared for a detention hearing in the District of Oregon on September 30, 2020. See Docket 57-1. At the conclusion of that hearing, the magistrate judge ordered Mr. Dull Knife to be detained "without prejudice so that the matter [could] be considered again with new information once Mr. Dull Knife return[ed] to South Dakota," where the charged offenses allegedly occurred. Id. at p. 13. On November 30, 2020, after returning to the District of South Dakota, Mr. Dull Knife made his initial appearance before Magistrate Judge Daneta Wollmann. See Docket 43.

      On March 18, 2021, defense counsel filed a motion seeking pretrial release from custody for Mr. Dull Knife. (Docket 57). Counsel stated Mr. Dull Knife "proposes to reside with his sister . . . in Rapid City, SD, to be closer to court. He agrees to all the proposed conditions listed in the pretrial services

report." Id. at p. 1.  On March 22, 2021, Magistrate Judge Wollmann held a hearing on the motion.  See Docket 60.  She subsequently entered an order finding a serious risk Mr. Dull Knife would endanger the safety of another person or the community and ordered him detained pending trial.  (Docket 61).  Now pending is Mr. Dull Knife's appeal from that order.  (Docket 68).  Also pending is a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 previously filed by Mr. Dull Knife on February 10, 2021.  (Docket 42).  The court takes up the appeal and *pro se* petition in turn.

I. **Appeal from Order Denying Pretrial Release**

A. **Facts**

This preliminary factual recitation is based on the allegations in the indictment (Docket 1), information contained in the pretrial services report (Docket 25) and addendum (Docket 26), Mr. Dull Knife's motion for release (Docket 57) and the attached transcript of the hearing in the District of Oregon (Docket 57-1), and the transcript of his reopened detention hearing before Magistrate Judge Wollmann (Docket 64).

The charges against Mr. Dull Knife stem from an incident in August 2020 involving the shooting of a vehicle.  See Docket 1; Docket 57-1 at p. 4.  Multiple witnesses identified Mr. Dull Knife as the alleged shooter.  (Docket 64 at p. 5).  Two individuals arrived in the vehicle at the residence Mr. Dull Knife shared with his partner, the co-defendant in this case.  Id. at p. 8.  They were there to pick up another individual who was at the residence, but that person was not

2

ready to leave so the vehicle's occupants decided to come back later. Id. As they left, Mr. Dull Knife allegedly pursued the vehicle, shooting multiple rounds into it. Id.; see also Docket 57-1 at p. 4. The shooting caused significant property damage to the vehicle, and one of the vehicle's occupants was struck, causing serious injury to her hand. (Dockets 57-1 at p. 4 & 64 at pp. 4-5). Within days of the incident and after having been in contact with law enforcement related to the investigation of this case, Mr. Dull Knife and his partner, the co-defendant in this case, left South Dakota with their infant child and travelled to Oregon. See Dockets 57-1 at p. 4 & 64 at pp. 5-6. They stayed with family of Mr. Dull Knife's partner for several weeks until his arrest on the instant charges. (Docket 25 at p. 2). The government contends Mr. Dull Knife's move to Oregon was an attempt to elude arrest. See Dockets 57-1 at p. 4 & 64 at pp. 5-6. However, Mr. Dull Knife contends the purpose of the family's move was to live with and provide care for his partner's ailing mother. See Docket 57-1 at pp. 5-6.

Prior to the incident alleged in this case, Mr. Dull Knife was a lifelong resident of South Dakota, living in Rapid City and the Pine Ridge Reservation. (Docket 25 at p. 2). He has a history of employment working for the Oglala Sioux Tribe's Border Patrol during the COVID-19 pandemic and as a wood vendor on the reservation. Id. He has negligible criminal history according to state and federal records. (Dockets 26 at p. 1 & 64 at p. 5). However, his tribal criminal record indicates past arrests for child endangerment, disorderly

3

conduct, elder abuse, breaking and entering, a weapons offense and multiple assaults.  See Docket 64 at pp. 5, 14-15.

If released from pretrial custody, Mr. Dull Knife proposes to live with his sister in Rapid City.  Id. at p. 3.  His sister has represented she is willing and prepared to have Mr. Dull Knife live with her and ensure his appearance in court.  Id.  The United States Probation Office recommended Mr. Dull Knife be released on his own recognizance with conditions of release, including that he shall not have any contact with the alleged victim in this case, witnesses or the co-defendant.  See Docket 26 at pp. 1-2.

**B.    Legal Standard**

A person "ordered detained by a magistrate judge . . . may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order."  18 U.S.C. § 3145(b).  The district court reviews a detention order entered by a magistrate judge *de novo*.  See United States v. Maull, 773 F.2d 1479, 1481 (8th Cir. 1985) (*en banc*).  "To engage in a meaningful de novo review, the district court must have available the options open to the magistrate" under the Bail Reform Act, 18 U.S.C. § 3142.  Maull, 773 F.2d at 1482 (referencing United States v. Orta, 760 F.2d 887, 890 (8th Cir. 1987) (*en banc*)).  The district court "shall order the pretrial release of the person on personal recognizance, or upon execution of an unsecured appearance bond . . . unless the [court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community."  18 U.S.C. § 3142(b).  If the

court determines release upon personal recognizance or an unsecured appearance bond will not reasonably assure appearance or will endanger the safety of others, it must next consider whether release on conditions will.  See id. § 3142(c).  If so, the court "shall order the pretrial release of the person" subject to the conditions that the person "not commit a Federal, State, or local crime during the period of release and . . . cooperate in the collection of a DNA sample," if authorized under 42 U.S.C. § 14135a, as well as the "least restrictive further condition, or combination of conditions."  18 U.S.C. § 3142(c)(1)(A)-(B).

In determining whether release on conditions is appropriate, the court considers:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial . . . ; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Id. § 3142(g).

However, for certain enumerated offenses, for example if the court "finds that there is probable cause to believe that the person committed . . . an offense under section 924(c) [of title 18]," a rebuttable presumption applies "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." Id. § 3142(e)(3). "In a presumption case . . . a defendant bears a limited burden of production – not a burden of persuasion – to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight." United States v. Abad, 350 F.3d 793, 797 (8th Cir. 2003) (quoting United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001)). "Once a defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." Id.

If the presumption is rebutted, "[a] defendant may be detained before trial '[o]nly if the government shows by clear and convincing evidence that no release condition or set of conditions will *reasonably assure* the safety of the community and by a preponderance of the evidence that no condition or set of conditions . . . will *reasonably assure* the defendant's appearance . . . .' " Id. (quoting United States v. Kisling, 334 F.3d 734, 735 (8th Cir. 2003) (emphasis in original)).

6

**C.     Analysis**

Mr. Dull Knife is charged with an offense to which the rebuttable presumption applies—discharge of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii).  See Docket 1.  He bears the burden of production to present evidence he does not pose a flight risk or danger to the safety of another person or the community.  In determining whether Mr. Dull Knife produced sufficient evidence to rebut the presumption of detention, the court looks to the Bail Reform Act factors.  See United States v. Cantu, 935 F.2d 950, 951 (8th Cir. 1991).

**i.     Nature of the offenses charged**

The serious nature of the offenses charged weigh against a finding that the detention presumption is rebutted.  Mr. Dull Knife is charged with assault with intent to commit murder and assault with a dangerous weapon, as well as with discharging a firearm during those alleged assaults.  The alleged victim of the shooting suffered a significant injury to her hand.  Based on the circumstances of the incident known to the court at this time—specifically, that Mr. Dull Knife allegedly pursued and fired multiple unsolicited rounds into a vehicle leaving his property—it seems fortunate for Mr. Dull Knife and the occupants of the vehicle that the outcomes for everyone involved were not more severe.

7

### ii. Weight of the evidence

While Mr. Dull Knife is presumed innocent of the charges against him unless and until proven otherwise, multiple witnesses have identified Mr. Dull Knife as the alleged shooter. The court cannot take lightly his alleged involvement in such a serious matter.

### iii. History and characteristics of Mr. Dull Knife

Mr. Dull Knife's family and community ties, history of employment and negligible state and federal criminal history weigh in favor of a finding that the detention presumption is rebutted. The court views Mr. Dull Knife's favorable state and federal criminal history as being somewhat tempered by his tribal record, which involves several arrests for apparently violent behavior. However, the court notes that the discussion of his tribal criminal record indicates it consists primarily of arrests and reports, and so without more detailed or clarifying information, the court cannot give his tribal record significant weight.

With regard to Mr. Dull Knife's history and characteristics, the court is most troubled by the timing of Mr. Dull Knife's move to Oregon. The court is sympathetic to the issue of the co-defendant's mother's ailing health and the family's need to provide her care. However, the timing of Mr. Dull Knife's move to Oregon only days after the incident alleged in this case and after having been contacted by law enforcement in relation to their investigation is an

element of Mr. Dull Knife's history that gives the court pause and weighs against a finding that the detention presumption is rebutted.

### iv.  Danger to Any Person or the Community

The violent nature of the offenses charged, the highly dangerous conduct that is the basis of those charges and Mr. Dull Knife's tribal record indicating at least some history of violent behavior, taken together, weigh against a finding that the detention presumption is rebutted.

Having considered the facts of this case as they are known at this time and the Bail Reform Act factors, the court finds Mr. Dull Knife has not presented sufficient evidence that he does not pose a danger to the community or a risk of flight to rebut the presumption of pretrial detention.

## II.  Petition for Writ of Habeas Corpus

On February 10, 2021, Mr. Dull Knife filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his pretrial detention in this case.  See Docket 42.  Having now received a hearing on the matter of his pretrial detention and the opportunity to be fully heard at the hearing and on appeal from Magistrate Judge Wollmann's detention order, the court finds Mr. Dull Knife's *pro se* petition for a writ of habeas corpus moot.

Accordingly, it is

ORDERED that defendant's appeal from the Magistrate Judge's order denying his motion for release (Docket 68) is denied.

9

IT IS FURTHER ORDERED that defendant's *pro se* petition for a writ of habeas corpus (Docket 42) is denied as moot.

Dated June 14, 2021.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE