UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>GEORGE DULL KNIFE,<br>Defendant. | 5:20-CR-50122-JLV<br><br>REPORT AND RECCOMENDATION ON MOTION TO DISMISS FOR LACK OF JURISDICTION (DOC. 74) |

George Dull Knife, *pro se* Defendant, filed a Motion to Dismiss the Indictment in this case. (Doc. 74). The United States filed a memorandum in opposition[1] to the motion. (Doc. 81). Mr. Dull Knife filed a reply brief. (Doc. 87). Based on a careful consideration of the issues, the Court respectfully makes the following:

**RECOMMENDATION**

It is respectfully recommended that Defendant's Motion to Dismiss be denied.

**JURISDICTION**

Defendant is charged in an Indictment with Discharge of a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C.

[1] In subsequent pleadings, Mr. Dull Knife moves to strike the government's response. For the reasons stated in the Order Denying Motion to Strike and Order Denying Motion to Grant Unopposed Motions, the court considers the arguments and authorities set for the government's brief.

§ 924(c)(1)(A)(iii); Assault with Intent to Commit Murder, in violation of 18 U.S.C. §§ 113(a)(1) and 1153; and Assault with a Dangerous Weapon, in violation of 18 U.S.C. §§ 113(a)(3) and 1153. The pending Motion was referred to the Magistrate Judge for resolution pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Jeffrey L. Viken's Standing Order dated April 1, 2018.

## FACTUAL BACKGROUND

Defendant filed the present Motion to Dismiss on May 28, 2021. (Doc. 74). Defendant's Motion to Dismiss argues the following: 1) "the indictment fails to charge an offense against the Laws of the United States because no jurisdiction has been ceded or accepted over the place where the criminal activity is alleged to have occurred;" 2) "the trial court is without subject-matter jurisdiction under 18 U.S.C. § 1153;" and 3) the criminal statutes exceed the power of Congress as applied to the defendant's conduct, because it violates the defendant's Due Process rights under the Fifth Amendment and encroaches on the sovereignty and jurisdiction of the Oglala Sioux Tribe in violation of Article I, clause 3 of the Ft. Laramie Treaty and the Article VI, clause, 2 of the United States constitution. (Doc. 74). In opposition, the United States argues that the Major Crimes Act confers jurisdiction over the defendant for the crimes charged in the Indictment. (Doc. 81).

The Indictment charges Mr. Dull Knife as follows:

Count I

> On or about August 5, 2020, near Kyle, in Indian country, in the District of South Dakota, the defendant, George Dull Knife, an Indian person, did knowingly use, carry, brandish, and discharge

> a firearm during and in relation to a crime of violence for which he could be prosecuted in a court of the United States, that is, the assault of Carmen Burgee, as charged in Counts II and III, in violation of 18 U.S.C. §§ 113(a)(1), 113(a)(3), and 1153, all in violation of 18 U.S.C. § 924(c)(1)(A)(iii).
>
> Count II
>
> On or about August 5, 2020, near Kyle, in Indian country, in the District of South Dakota, the defendant, George Dull Knife, an Indian person, did assault Carmen Burgee with the intent to commit murder, all in violation of 18 U.S.C. §§ 113(a)(1) and 1153.
>
> Count III
>
> On or about August 5, 2020, near Kyle, in Indian country, in the District of South Dakota, the defendant, George Dull Knife, an Indian person, did assault Carmen Burgee with a dangerous weapon, with intent to do bodily harm, all in violation of 18 U.S.C. §§ 113(a)(3) and 1153.

(Doc. 1).

## DISCUSSION

### I. Subject matter jurisdiction under 18 U.S.C. §1153

The Indian Major Crimes Act, 18 U.S.C. § 1153, provides the federal courts with exclusive jurisdiction over enumerated crimes committed by an Indian in Indian country. The Major Crimes Act presently reads as follows: "Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, . . .a felony assault under section 113 . . . within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States." 18 U.S.C. § 1153(a). Federal jurisdiction over Indian persons is a legal principle dating back to the 1800s in

an attempt to balance the inherent sovereignties of the United States and Tribal governments.

The Major Crimes Act was enacted in 1885 in response to Ex parte Crow Dog, 109 U.S. 556 (1883), and provides federal jurisdiction to certain enumerated crimes committed by an Indian person against another Indian person in Indian country. Since 1885, the Constitutionality of the Major Crimes Act has been consistently upheld in landmark Indian Law decisions by the Supreme Court. See, e.g., United States v. Kagama, 118 U.S. 375, (1886) (upholding the Major Crimes Act); United States v. Antelope, 430 U.S. 641 (1977) ("Congress has undoubted constitutional power to prescribe a criminal code applicable in Indian country."). The Major Crimes Act is clear on its face that it permits the United States federal jurisdiction over Indian persons who commit any of the enumerated offenses in Indian country, including assault.

However, the Indian Major Crimes Act does not encompass federal statutes of general applicability, that is, "those in which situs of the offense is not an element of the crime." United States v. Wadena, 152 F.3d 831, 841 (8th Cir. 1998). "[F]ederal courts may enforce general federal criminal laws against *all* persons, including Indians within Indian country." Id. (emphasis in original).

Count I charges Mr. Dull Knife with Discharge of a Firearm During the Commission of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). This crime has two essential elements, which are: (1) the defendant committed the crime of Assault, as charged in Counts II and III; and (2) the defendant

knowingly discharged a firearm during and in relation to the Assault as charged in Counts II and III. 18 U.S.C. § 924(c)(1)(A)(iii); see United States v. Gregg, 376 F. Supp. 2d 949, 951–52 (D.S.D. 2005). A violation of § 924(c) is a statute of general applicability which does not rely on a Defendant's status as an Indian person, nor does it rely on the situs of the offense. See United States v. Wadena, 152 F.3d 831, 853 (8th Cir. 1998) (permitting the federal government jurisdiction to prosecute a crime perpetrated by one Indian and another Indian, regardless of where the offense occurred, under federal criminal statute of general applicability). Therefore, Defendant's argument fails regarding Count I.

Count II of the Indictment charges Mr. Dull Knife with Assault with Intent to Commit Murder, in violation of 18 U.S.C. §§ 113(a)(1) and 1153. Count III charges him with Assault with a Dangerous Weapon, in violation of 18 U.S.C. §§ 113(a)(3) and 1153. The Major Crimes Act specifically provides the federal courts with exclusive jurisdiction over felony assaults in violation of Section 113. Therefore, Mr. Dull Knife's argument fails regarding Counts II and III.

## II. Indian Country Jurisdiction

Mr. Dull Knife argues that the indictment fails to charge an offense against the law of the United States because no jurisdiction has been ceded or accepted over the place where the criminal activity is alleged to have occurred. Similarly, Mr. Dull Knife argues that the criminal statues applied to the Defendant exceeds the power of Congress and violates his Due Process rights

and encroaches on the sovereignty and jurisdiction of the Oglala Sioux Tribe.

To the extent that the constitutionality of a federal statute is challenged in the motion to dismiss the indictment, federal statutes are presumed constitutional and should only be invalidated upon a plain showing that Congress exceeded its constitutional authority. See United States v. Morrison, 529 U.S. 598, 607 (2000). The Supreme Court of the United States has recognized a plenary power to regulate Indian affairs deriving from both the text and structure of the Constitution. United States v. Lara, 541 U.S. 193, 200 (2004) (holding that the commerce and treaty clause and structure of the Constitution are basis for "plenary and exclusive" power of Congress. Morton v. Mancari, 417 U.S 535, 551-52 (1974) ("the plenary power of Congress to deal with the special problems of Indians is drawn both explicitly and implicitly from the Constitution itself."); McClanahan v. State Tax Comm'n of Ariz., 411 U.S. 164, 172 n.7 (1973) ("The source of federal authority over Indian matters has been the subject of some confusion, but it is now generally recognized that the power derives from federal responsibility for regulating commerce with Indian tribes and for treaty making.) It is well-settled that "federal regulation of Indian affairs [including the Major Crimes Act] is not based upon impermissible classifications." United States v. Antelope, 430 U.S. 641, 646 (1977) (holding that Major Crimes Act does not violate equal protection principles); see, e.g., Kills Crow v. United States, 451 F.2d 323, 325–27 (8th Cir. 1971). The authority of Congress over Indian affairs is now well recognized and established. The Supreme Court of the United States has upheld the

constitutionality of the Major Crimes Act numerous times. United States v. Kagama, 118 U.S. 375 (1886); Negonsott v. Samuel, 507 U.S. 99, 103 (1993). "Congress has undoubted constitutional power to prescribe a criminal code appliable in Indian country." United States v. Antelope, 430 U.S. 641, 648 (1977).

Mr. Dull Knife argues, with almost no legal authority[2], that the criminal statutes he is charged with violating encroach upon the sovereignty and jurisdiction of the Oglala Sioux Tribe. Mr. Dull Knife also invokes the "bad men" clause of the Treaty of Fort Laramie of 1868.

"The language of the Fort Laramie Treaty does not exempt Native Americans of Sioux Indian heritage from prosecution in federal court for major crimes committed in Indian country." Wright v. United States, No. 11-3032-RAL, 2012 WL 1678984, at *5 (D.S.D. May 14, 2012). Likewise, the "bad men" clause of the Fort Laramie Treaty does not render Mr. Dull Knife immune from prosecution for violations of federal law. The "bad men" clause provides that:

> If bad men among the Indians shall commit a wrong or depredation upon the person or property of any one, white, black, or Indian, subject to the authority of the United States, and at peace therewith, the Indians herein named solemnly agree that they will, upon proof made to their agent and notice by him, deliver up the wrong-doer to the United States, to be tried and punished according to its laws.

[2] Defendant cites Article I, Clause 3 of the 1868 Fort Laramie Treaty and Article VI, cl.2 of the United States Constitution. In a footnote, Defendant also cites McGirt v. Oklahoma, 140 S.Ct. 2452 (2020).

Art. I, paragraph 3, Treaty of Ft. Laramie of 1868. "While Native Americans have good reason in a historical sense to question how the United States chose to honor or dishonor the Fort Laramie Treaty of 1868, the 'bad men' clause and the treaty itself does not render [an Indian person] immune from prosecution for violation of federal criminal law. The federal court ha[s] subject matter jurisdiction over [an Indian person] due to the fact that [the alleged] crime occurred in Indian County and [the defendant] is a Native American." Wright, 2012 WL 1678984, at *5 (citing United States v. Jones, 440 F.3d 927, 929 (8th Cir. 2006)). The Treaty of Fort Laramie of 1868 does not deprive the federal court of subject matter jurisdiction.

In support of his motion, Mr. Dull Knife quotes portions of the Supreme Court case of McGirt v. Oklahoma, 140 S.Ct. 2452 (2020). However, McGirt is distinguishable from this situation and does not deprive this court of personal jurisdiction over the defendant.

In McGirt, the Supreme Court found that the Creek Reservation, although heavily divided through allotment, was never disestablished or diminished. This meant that all the land that initially made up the original reservation was still considered Indian country in the eyes of the law. Integral in the Court's decision was the fact that Congress had never expressly disestablished or diminished the original Creek Reservation established in 1833.

The McGirt Court makes it very clear that Congress has the sole authority to disestablish or diminish a reservation. "'[O]nly Congress can

divest a reservation of its land and diminish its boundaries"' Id. at 2462 (quoting Solem v. Bartlett, 465 U.S. 463, 470, 104 S.Ct. 1161). This power, though only held by Congress, is quite important and can have far-reaching consequences. "[T]he Legislature wields significant constitutional authority when it comes to tribal relations, possessing even the authority to breach its own promises and treaties." Id. (citing Lone Wolf v. Hitchcock, 187 U.S. 553, 566–68 (1903)). However, because this power is so significant, when disestablishing or diminishing a reservation, Congress must "clearly express its intent to do so, '[c]ommon[ly with an] [e]xplicit reference to cession or other language evidencing the present and total surrender of all tribal interests.'" Id. at 2463 (quoting Nebraska v. Parker, 577 U.S. 481, 488, 136 S.Ct. 1072, 1079 (2016)).

After analyzing Congress' acts affecting the Creek Nation, the McGirt Court concluded Congress did not at any time explicitly disestablish the reservation as outlined by the 1866 Treaty with the Creek. "[B]ecause there exists no equivalent law [after the 1866 Treaty, ceding and conveying a portion of the reservation to the United States,] terminating what remained, the Creek Nation survived allotment." Id. at 2463. Therefore, the Creek Reservation extends to the boundaries established by the 1866 Treaty, and that land is Indian country. The McGirt Court concluded that "When Congress adopted the MCA, it broke many treaty promises that had once allowed tribes like the Creek to try their own members. But, in return, Congress allowed only the federal government, not the States, to try tribal members for major crimes." Id. at

2480. Mr. Dull Knife's reliance on McGirt is misplaced, as the United States Supreme Court upheld the federal court's exclusive jurisdiction over the types of cases and charges that Mr. Dull Knife is currently facing.

Therefore, the Court concludes that this court has jurisdiction over this case pending against Mr. Dull Knife under the constitutionally recognized authority as set forth above.

DATED this 31st day of August, 2021.

BY THE COURT:

DANETA WOLLMANN
United States Magistrate Judge

**NOTICE TO PARTIES**

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).